620 So.2d 778 (1993)
Michael GRANT, Appellant,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Appellee.
No. 91-3303.
District Court of Appeal of Florida, Fourth District.
April 7, 1993.
Order Denying Rehearing July 21, 1993.
Mark R. McCollem of Chidnese & McCollem, Fort Lauderdale, for appellant.
James K. Clark of Barnett, Clark and Barnard, Miami, for appellee.
HERSEY, Judge.
Michael Grant appeals a summary judgment rendered in favor of his uninsured motorists insurance carrier, State Farm Fire and Casualty Company (State Farm).
Grant's policy with State Farm listed a 1978 Corvette as the only insured vehicle. Grant was involved in a collision when the motorcycle owned and operated by him collided with an uninsured motorist while on a public road.
State Farm denied uninsured motorist coverage based upon an express exclusion in Grant's policy disallowing claims arising from the operation of motor vehicles owned by the insured but not listed in the policy.
Litigation ensued, resulting in the summary judgment on appeal. Appellant Grant argues that the trial court erred in finding that a motorcycle is a motor vehicle as defined in the subject policy because that policy clearly defines a motor vehicle as a vehicle having four or more wheels. Appellee State Farm argues that the trial court properly determined that a motorcycle is included in the term motor vehicle because the Florida Financial Responsibility Act has defined a motor vehicle as a "self-propelled vehicle which is designed and required to be licensed for use upon a highway" and thus motorcycles are included in that definition.
The trial court determined that, as a matter of law, the term "motor vehicle" as used in the UM section of the policy included motorcycles. Accordingly, the trial court found that appellant was not entitled to UM benefits.
The policy defines a "car" as a "land motor vehicle with four or more wheels, which is designed for use mainly on public roads." This definition is found in the preface. In the section entitled "Section II  No-Fault  Coverage P and Medical Payment  Coverage C," the policy defines a motor vehicle as "a vehicle with four or more wheels that: 1. is self-propelled and is of a type: a. designed for, and b. required to be licensed for use on Florida highways ..." (emphasis added). This is the only place in the policy where the term motor vehicle is defined.
Section III of the policy is styled, "Uninsured Motor Vehicle  Coverages U and U2." That section does not contain any other different or separate definition of a *779 car or motor vehicle. Appellant has UM coverage U3, and that section provides the following exclusion:
When Coverage U3 Does Not Apply There is no coverage:
* * * * * *
3. For bodily injury to an insured while occupying a motor vehicle owned by you, your spouse or any relative if it is not insured for this coverage under this policy.
(Emphasis added.)
Chapter 324, Florida Statutes (1991), known as the Financial Responsibility Law, requires persons operating motor vehicles to maintain a minimum amount of insurance. It defines a motor vehicle as: "Every self-propelled vehicle which is designed and required to be licensed for use upon a highway... ." § 324.021(1), Fla. Stat. (1991).
In comparison, section 627.732, Florida Statutes (1991), pertaining to PIP coverage, defines motor vehicles as "any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of this state... ." § 627.732(1), Fla. Stat. (1991) (emphasis added).
Appellant argues that in the subject policy, the only definition of the term "motor vehicle" specifies a land vehicle that has four wheels. In addition, he points to section 627.732, Florida Statutes (1991), asserting that his motorcycle is not a motor vehicle by that definition, and thus he should not be excluded from receiving UM benefits since he was not driving a "motor vehicle" owned by him which was not listed on the subject policy.
Appellee on the other hand asserts that the term motor vehicle as defined by the Financial Responsibility Law clearly includes motorcycles in the provision "any self-propelled vehicle." Appellee cites to Chapter 324, Florida Statutes (1991), for support of this argument and definition. Appellee also asserts that the definition given in the subject policy applies only to Section II No Fault, and not to Section III UM Benefits.
Essentially, then, the question centers on what definition should be given to the term "motor vehicle" in the context of this case and the accompanying insurance policy.
The case of Carguillo v. State Farm Mutual Automobile Ins. Co., 529 So.2d 276 (Fla. 1988), cited by appellee, and similar cases, are not really helpful to our analysis, focusing, as they do, on the status of the uninsured motorist. More pertinent to our inquiry are those cases which concern the status of the insured policy holder.
In the case of Standard Marine Ins. Co. v. Allyn, 333 So.2d 497 (Fla. 1st DCA 1976), the insured was injured by an uninsured motorist operating a motorcycle. In response to the insurance company's contention that a two-wheeled vehicle should be excluded from coverage, the First District held that:
We do not perceive that the legislature, by enacting the Florida Automobile Reparations Reform Act, intended to exclude those motor vehicles ... from the umbrella of uninsured motorists. The statutory definition of a "motor vehicle" found in the Financial Responsibility Act is far more consonant with the public policy of this state as to uninsured motorist than the "PIP" definition in the instant policy. ...
333 So.2d at 499 (footnotes omitted) (emphasis added).
The Third District in State Farm Automobile Ins. Co. v. Kuhn, 374 So.2d 1079 (Fla. 3d DCA 1979), cert. denied, appeal dismissed, 383 So.2d 1197 (Fla. 1980), used similar reasoning to deny coverage to the policy holder. Robert Kuhn had two separate insurance policies; one for his truck and one for his motorcycle. The policy for his truck included UM coverage, but in the policy for his motorcycle, Kuhn specifically rejected UM coverage. Id. at 1080.
While riding his motorcycle, Kuhn was involved in an accident with an uninsured motorist and later submitted a claim for UM benefits under his truck policy. State Farm denied coverage, and the trial court granted a summary judgment in favor of Kuhn. On appeal, the Third District reversed that summary judgment, holding *780 that Kuhn was restricted to the coverage in the policy issued on the motorcycle since the motorcycle was involved in the accident, not the truck. Id. at 1081.
Citing section 627.4132, Florida Statutes (1977), which prohibits the stacking of UM coverage, the court held, "[h]aving rejected uninsured motorist coverage thereon [his motorcycle], he is not entitled to the uninsured motorist benefits provided for in his truck policy under the plain terms of the statute." 374 So.2d at 1081. Accord Indomenico v. State Farm Mut. Auto Ins. Co., 388 So.2d 29, 30 (Fla. 3d DCA 1980).
We note in passing that since Indomenico and Kuhn were decided, section 627.4132 has been amended to omit its reference to UM coverage. See New Hampshire Ins. Group v. Harbach, 439 So.2d 1383, 1385 (Fla. 1983); Ch. 80-364, § 1 at 1495, Laws of Fla. In our view, the reasoning in the foregoing cases and the public policy considerations of Allyn remain viable and continue to be applicable to the situation presented by the instant case.
In a slightly different context the Fifth District, in Nationwide Mutual Fire Ins. Co. v. Phillips, 609 So.2d 1385 (Fla. 5th DCA 1992), resolved the issues involved in that case on the unstated assumption that a motorcycle was a motor vehicle for purposes of UM coverage.
Based upon the statutory definition, public policy and precedent (by analogy), we affirm the summary final judgment.
AFFIRMED.
ANSTEAD and LETTS, JJ., concur.

ON REHEARING
PER CURIAM.
The petition for rehearing is denied. However, we acknowledge that our opinion conflicts with that of the Third District in Petersen v. State Farm Fire and Casualty Co., 615 So.2d 181 (Fla. 3d DCA 1993). In Petersen, the Third District reaches an opposite result on virtually identical facts.
ANSTEAD and HERSEY, JJ., and OWEN, WILLIAM C., Jr., Senior Judge, concur.